# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FINNEY, | ) 1:08-CV-01374 OWW JMD HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| DERRAL ADAMS, | ) |
| Respondent. | ) |

Petitioner David Finney ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a conviction in 1974 for first degree felony murder and first degree robbery. (Answer at 1; Pet. at 1). Petitioner received a sentence of seven years to life. (Pet. at 1).

Petitioner is not challenging his conviction; rather, Petitioner contends that the denial of parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in February 2007 for a parole consideration hearing, violates his constitutional rights. (Pet. at 5).

Petitioner subsequently filed a petition for writ of habeas corpus with the San Diego County Superior Court, challenging the Board's denial of parole. (See Answer Ex. 1). The San Diego County Superior Court issued a reasoned opinion rejecting Petitioner's claims. (See Answer Ex. 2).

Petitioner also filed a petition for writ of habeas corpus with the California Court of Appeal. (See Answer Ex. 2). The State appellate court issued a reasoned decision upholding the Board's denial of parole. (See Answer Ex. 3).

Petitioner filed a petition for review with the California Supreme Court, which summarily

1  denied the petition. (See Answer Exs. 4, 5).

2  On September 15, 2008, Petitioner filed the instant federal petition for writ of habeas corpus,
3  alleging two grounds for relief. Respondent filed an answer, responding to the allegations set forth
4  in the petition, on January 8, 2009. Respondent admits that Petitioner has exhausted his state
5  remedies and that the instant petition is timely. (Answer at 2). Petitioner filed a reply to the
6  Respondent's answer on February 27, 2009.

## FACTUAL BACKGROUND

8  The facts of the commitment offense are considered by the Board in determining whether
9  Petitioner is suitable for parole; thus, the facts are relevant to this Court's inquiry–specifically,
10 whether the State court's decision upholding the denial of parole was objectively unreasonable. *See*
11 Cal. Code Regs., tit. 15, § 2402(c)(1). The Board incorporated into the record a summary of the
12 offense taken from the California Court of Appeal's August 27, 1975, decision. (Pet. Ex. T at 27-
13 31). The facts as read into the record of the parole hearing illustrate that Petitioner and his co-
14 defendant conspired to rob the victim. During the robbery, Petitioner pulled out a gun, which
15 Petitioner used to shoot the victim in the head. Petitioner claims that the shooting was accidental.
16 Petitioner then left the crime scene with the victim's money. Petitioner claims that he believed the
17 victim was deceased at the time he left. Petitioner's co-defendant transported the victim to a cliff
18 where the co-defendant stabbed the victim nine times and hit him repeatedly on the head with a rock
19 and pipe wrench.

## DISCUSSION

21 **I.     Jurisdiction and Venue**

22 A person in custody pursuant to the judgment of a State court may petition a district court for
23 relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or
24 treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529
25 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by
26 the United States Constitution stemming from the Board's denial of parole. While Petitioner is
27 currently incarcerated at Ironwood State Prison in Blythe, California, Petitioner's denial of parole
28 occurred while he was incarcerated at the California Substance Abuse Treatment Facility in

1  Corcoran, California.  The city of Corcoran is located in Kings County, which is within this judicial
2  district.  28 U.S.C. § 84(b).  Thus, the Court has jurisdiction over Petitioner's claims.  *See* 28 U.S.C.
3  § 2241(d).

## II.     ADEPA Standard of Review

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court

renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

\\\

\\\

1   The initial step in applying AEDPA's standards requires a federal habeas court to "identify
2   the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091
3   (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court
4   analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the
5   presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests
6   upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or
7   unexplained State court decisions to the last reasoned decision in order to determine whether that
8   decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v.
9   Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).

Here, the San Diego County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. 2, 3, 5). As the California Supreme Court issued a summary denial of Petitioner's claims, the Court "look[s] through" that court's decision to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

**III.   Review of Petitioner's Claim**

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).

   *A.   Legal Standard for Denial of Parole*

Petitioner contends that his current detention is unconstitutional as the Board's decision in February 2007 was not supported by some evidence. "We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 3). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (*Id*. at 5). Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*,

825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole. The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other

1  commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit.
2  15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying
3  offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to
4  incarceration for the underlying offense, of violence; a history of unstable relationships with others;
5  and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re*
6  *Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### B. State Court Decision

After reviewing the record, the Court does not find that the Court of Appeal unreasonably applied the some evidence standard. *See* 28 U.S.C. § 2254(d)(1). The Court notes that the appellate court found that there was some evidence outside of the commitment offense that supported the Board's finding that Petitioner posed a current danger to society. Those factors include most prominently, Petitioner's criminal misconduct while incarcerated and Petitioner's numerous disciplinary infractions. An additional factor that the Board included in its decision was the unfavorable psychological evaluation. The Court is convinced that these three factors constitute the modicum of evidence necessary to meet the some evidence standard; thus, Petitioner's constitutional rights were not violated by the denial of parole.

Petitioner spends a significant amount of time arguing that the factors relied on by the Board–namely his escapes from prison, his disciplinary record, the commitment offense, his criminal misconduct prior to incarceration, and the psychological evaluation–cannot constitute some evidence of current dangerousness. The California Supreme Court recently held that reliance on immutable factors, such as a petitioner's commitment offense and prior criminal misconduct, may violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). The *Lawrence* court found that the intervening twenty-four years in which Lawrence, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's

conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226. Similarly, the Ninth Circuit has previously warned that continued reliance on immutable factors may not comport with the protections of the Due Process Clause. *See Irons*, 505 F.3d at 854; *Biggs*, 334 F.3d at 917.

As noted by the California Court of Appeal, the Board did not rely only on immutable factors in finding that there was some evidence of Petitioner's current dangerousness. While California Court of Appeal briefly discussed the Board's characterization of the crime, the appellate court's analysis focused on two additional factors. As noted by the Court of Appeal, Petitioner's criminal misconduct while incarcerated (namely his multiple escapes from prison) and his disciplinary record evidence a failure to rehabilitate. The record of the parole hearing revealed that Petitioner escaped from prison twice. (Pet. Ex. T at 37). The record also revealed that since his last parole hearing in 2002, Petitioner received four form CDC 115 disciplinary violation reports for forgery and falsifying documents, possession of manufactured alcohol, refusal to obey orders, and disrespect towards prison staff. (Id. at 48).

Petitioner argues that his criminal misconduct and disciplinary infractions while incarcerated are not probative of his current dangerousness as they are non-violent. The Court notes that serious misconduct while incarcerated is a factor the California legislature explicitly deems an unsuitability factor. *See* Cal. Code Regs., tit. 15, § 2402(c)(6) (stating that engaging in serious misconduct while in prison or jail is a circumstance that tends to indicate unsuitability). Furthermore, California courts have interpreted serious misconduct to encompass 115 violations. *See In re Reed*, 171 Cal.App.4th 1071, 1077 (Cal. Ct. App. 2009) (citing Cal. Code Regs., tit. 15, § 3312(a)(3) in stating "[a] CDC 115 documents misconduct that is 'believed to be a violation of law or is not minor in nature'"). Petitioner also attempts to justify the escapes, attributing the first escape to "not thinking clearly as to the matter of the law." (Pet. at 18). Petitioner attributes his second escape to "believ[ing] even more strongly that he had been grievously treated by the System." (Id). Likewise, Petitioner justifies his disciplinary record by attributing such conduct to frustration at not being paroled and "a grossly excessive term of imprisonment" when compared to his co-defendant. (Pet. at 18, 49). As noted by the appellate court, such actions demonstrated that "[Petitioner] was not rehabilitated and he presently has little, if any, ability to function within the law if paroled." (Answer Ex. 3 at5 2). The

1  Court agrees with the California Court of Appeal as Petitioner's actions and his attempted
2  justifications of those actions reveal a total disregard for the law and the legal system. Petitioner's
3  ability to follow the law is entirely probative of whether Petitioner poses a current risk of danger to
4  society if released.

5  The Board also noted that the psychological evaluation was unfavorable as it classified
6  Petitioner as a moderately high risk of danger when compared to average citizen.[1] (Id. at 61-62).
7  The psychological evaluation emphasized that Petitioner needed additional insight into his
8  commitment offense in order to avoid a return to prison. (Id. at 61-62; Pet. Ex. V1, Psychological
9  Evaluation, at 6). Furthermore, the evaluation noted Petitioner did not express empathy for his
10 victim or the victim's family. (Pet. Ex. T at 62). As noted by the Board, the evaluation also labeled
11 a return to alcohol and drugs as significant risk factors for violence. (Id; Pet. Ex. V1 at 5).

12 Thus, the Court finds Petitioner's circumstances distinct from those in *Lawrence* as
13 Petitioner's period of incarceration does not demonstrate rehabilitative efforts that reduces the
14 probative value of his commitment offense. The psychological evaluation reveals that Petitioner
15 needs to gain more insight into his commitment offense. (Pet. Ex. V1 at 6). More importantly,
16 though, the psychological evaluation found that a return to alcohol on Petitioner's behalf would
17 create a significant risk of violence. One of Petitioner's recent disciplinary infractions is for
18 possession of manufactured alcohol and the psychological evaluation notes that Petitioner had
19 received a prior disciplinary infraction despite attending Narcotics and Alcoholics Anonymous. (Id.;
20 Pet. Ex. T at 48). Considering this information when combined with Petitioner's criminal
21 misconduct while incarcerated and the psychological evaluation's classification of Petitioner as a
22 moderately high risk of danger, the Court finds that there is ample evidence that Petitioner poses a

---

[1] Petitioner challenges the validity of the psychological evaluation at both the parole hearing and in briefing submitted to this Court, calling the evaluation "worthless." (Pet. at 32). The Court notes that Petitioner's challenge to the 2006 psychological evaluation was denied by Mental Health Services. (Pet. Ex. V1). Petitioner has not provided any further documentation to show that this denial has been overturned. Petitioner instead includes previous psychological evaluation and his own analysis of the psychological evaluation. The Court finds such evidence unpersuasive as Petitioner's disciplinary record demonstrates that he may be regressing from previous positive gains and thus the relevant psychological evaluation is the most recent one. The Court finds the psychological evaluations Petitioner has attached as exhibits, the most recent one being in 1993, irrelevant to determining Petitioner's current dangerousness in 2007. Likewise, as noted by the Board, Petitioner's own assessment of the psychological evaluation is not evidence as Petitioner does not possess the qualifications to conduct such an assessment. Even if Petitioner were qualified, the Court would question the probative value of such an assessment considering Petitioner's obvious bias.

current risk of danger to the public safety. This is especially true as the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Thus, the Court cannot say that the State's conclusion, upholding the denial of parole, was objectively unreasonable.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 28, 2009**          **/s/ John M. Dixon**
                                      UNITED STATES MAGISTRATE JUDGE